**Robert F. CRONKRITE and Carol J. Cronkrite, Plaintiff,**

v.

**D.C. FAHRBACH, M.D., Defendant.**

No. 2:91–cv–329.

United States District Court,
W.D. Michigan,
Northern Division.

April 22, 1994.

Vincent R. Petrucelli, Petrucelli & Petrucelli, Iron River, MI, for Robert F. & Carol J. Cronkrite.

Drew F. Seaman, Straub, Seaman & Allen, St. Joseph, MI, Harold J. Blanchet, Jr., Braun, Kendrick, Finkbeiner, Schafer & Murphy, Saginaw, MI, for Reese Products, Inc.

Harry Ingleson, II, Peacock & Ingleson, Sault Ste. Marie, MI, and Peacock & Ingleson, Petoskey, MI, for D.C. Fahrbach, M.D.

## OPINION

GREELEY, United States Magistrate Judge.

Plaintiffs Robert and Carol Cronkrite filed this personal injury action on December 23, 1991. Jurisdiction is based on the diversity of the parties.[1] Plaintiffs settled their claims against Reese Products, Inc., leaving only a medical malpractice claim against D.C. Fahrbach, M.D. Now before the Court is Defendant Fahrbach's Motion in Limine. Two issues are presented, both concerning the testimony of expert witnesses. The first issue is whether Ronald D'Agostino, D.O., should be permitted to testify. Dr. D'Agostino's name was not exchanged until after the court-imposed deadline for the exchange of witnesses. Defendant seeks to exclude Dr. D'Agostino's testimony.

Dr. D'Agostino treated the plaintiff[2] in the Emergency Room. Plaintiff indicates that Dr. D'Agostino will testify as a fact witness only, and will not testify concerning the defendant's standard of care. With those limitations, the testimony will be allowed.

The second issue is more complicated. Defendant maintains that plaintiff's witness, Dr. Woiteshek, is not competent to testify as to the defendant's standard of care.

The incident giving rise to plaintiff's injury occurred on December 26, 1989. On that date, the defendant, a medical doctor, board certified in Family Practice Medicine, examined the plaintiff. Plaintiff reported that he had been struck in the left leg by a steel pipe. Examination revealed a bleeding left shin. Plaintiff also reported pain in the leg. The defendant cleaned and sutured the laceration and sent the plaintiff home with further instructions and a prescription for pain.

Several days later, on January 1, 1990, plaintiff heard a loud crack and immediately

---

1. The parties filed a consent to proceed before the undersigned pursuant to 28 U.S.C. § 636(c).

2. Carol Cronkrite's claim is derivative. For convenience sake, references herein to "the plaintiff" are to Robert Cronkrite.

experienced severe pain in his leg. He fell to the ground, twisting his left ankle in the process. He was taken to the emergency room, at which time a displaced fracture of the left tibia was diagnosed. Plaintiff underwent surgical repair of the fracture. He developed an infection. These subsequent complications allegedly resulted in serious and permanent consequences. In addition, plaintiff suffered an injury to his ankle during the fall, which allegedly will have permanent effects.

According to plaintiff's theory of the case, plaintiff sustained a non-displaced linear fracture of his leg when hit by the pipe. That fracture would have been visible on an x-ray on December 26, 1989, had one been taken. At that time, the fracture would have been treatable with a cast and without surgery. Had the fracture been recognized on December 26, plaintiff maintains that he would not have suffered the severe and permanent consequences which followed.

At trial, plaintiff intends to present the testimony of Dwight Woiteshek, M.D., an orthopedic surgeon, by video, to establish that the defendant's standard of care on December 26, 1989, required an x-ray and that the defendant breached that standard of care by not taking an x-ray.[3] Defendant moves to strike all standard of care testimony from Dr. Woiteshek's video testimony, for the reason that Dr. Woiteshek is not competent to testify about the defendant's standard of care.

Initially, it should be acknowledged that the Federal Rules of Evidence permit the Court to admit expert testimony if the testimony will assist the trier of fact. Fed. R.Evid. 702. Were the issue presented by this motion governed by Rule 702, the testimony at issue would be, in my opinion, admissible. Michigan law, however, establishes much stricter qualifications for expert witnesses in medical malpractice cases. Since Michigan law provides the rule of decision in this diversity case, Rule 601 of the Federal Rules of Evidence requires that state competency rules as to witnesses be applied. *See Slifcak v. Northern Michigan Hospitals, Inc.,* No. 1:90–cv–565, 1991 WL 626469, 1991 U.S.Dist. LEXIS 11805 (W.D.Mich., Aug. 20, 1991) (unpublished) (a copy of which is attached).

Defendant maintains that since he is a general practitioner, plaintiff's expert is not competent to testify as to the standard of care pursuant to Michigan's "locality" rule. Under M.C.L.A. § 600.2912a; M.S.A. § 27A.2912(1), a specialist is held to the standard of care applicable to that specialty (a nationwide standard of care), but a general practitioner is held to the standard of care recognized in the community in which the defendant practices or a similar community (a local standard of care).[4] Dr. Woiteshek did not testify during his *de bene esse* deposition that he is familiar with the standard of care in Munising, Michigan, or in similar communities. Thus, according to defendant, the locality rule disqualifies Dr. Woiteshek from testifying as to the defendant's standard of care.

In response, plaintiff challenges defendant's characterization of himself as a general practitioner. Rather, plaintiff maintains that defendant is a specialist and that Dr. Woiteshek is competent to testify concerning the nationwide standard of care applicable under the circumstances. Alternatively, according to plaintiff, since defendant did not make the competency objection at the time of the deposition, he waived the issue. Fed. R.Civ.P. 32(d)(3)(A).

---

**3.** Dr. Woiteshek will also testify as to proximate cause and damages.

**4.** (1) In an action alleging malpractice the plaintiff shall have the burden of proving that in light of the state of the art existing at the time of the alleged malpractice:

(a) The defendant, if a general practitioner, failed to provide the plaintiff the recognized standard of acceptable professional practice in the community, and that as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.

(b) The defendant, if a specialist, failed to provide the recognized standard of care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances, and as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.

M.C.L.A. § 600.2912a; M.S.A. § 27A.2912(1).

Defendant is board certified in a recognized specialty. The American Board of Family Practice, Inc., which administers the certification process, defines "Family Practice" as "the medical specialty which is concerned with the total health care of the individual and the family." *See* "American Board of Family Practice, Inc." *Official American Board of Medical Specialties Directory,* 1994, at p. 697 (copy attached) (hereinafter "ABMS Dir., ABFP") The Board indicates that Family Practice was recognized as "the 20th primary medical specialty" in 1969. *Id.* Such a specialist is a primary care provider who maintains a general practice. Defendant holds himself out as a specialist in this area. Accordingly, the Court finds that defendant is a specialist in Family Practice. Accordingly, pursuant to Michigan law, defendant is subject to a nationwide standard of care for those certified in family practice. M.C.L.A. § 600.2912a; M.S.A. § 27A.2912(1).

▪ Defendant alternatively contends that Dr. Woiteshek is not qualified to testify as to the defendant's standard of care pursuant to M.C.L.A. § 600.2169(1); M.S.A. § 27A.2169(1).[5]

(1) In an action alleging medical malpractice, if the defendant is a specialist, a person shall not give expert testimony on the appropriate standard of care unless the person is or was a physician licensed to practice medicine or osteopathic medicine and surgery or a dentist licensed to practice dentistry in this or another state and meets both of the following criteria:

(a) Specializes, or specialized at the time of the occurrence which is the basis for the action, in the same specialty or a related, relevant area of medicine or osteopathic medicine and surgery or dentistry as the specialist who is the defendant in the medical malpractice action.

(b) Devotes, or devoted at the time of the occurrence which is the basis for the action, a substantial portion of his or her professional time to the active clinical practice of medicine or osteopathic medicine and surgery or the active clinical practice of dentistry, or to the instruction of students in an accredited medical school, osteopathic medical school, or dental school in the same specialty or a related, relevant area of health care as the specialist who is the defendant in the medical malpractice action.

M.C.L.A. § 600.2169(1); M.S.A. § 27A.2169(1).

According to defendant, Dr. Woiteshek does not specialize "in the same specialty or a related, relevant area of medicine" as the defendant. M.C.L.A. § 600.2169(1); M.S.A. § 27A.2169(1).

Dr. Woiteshek is a board certified orthopedic surgeon. Dr. Woiteshek is not a board certified family practitioner and thus does not specialize in the same specialty as the defendant.

Plaintiff contends however that Dr. Woiteshek practices a "related, relevant area of medicine," since plaintiff suffered an injury requiring orthopedic care and, in effect, defendant was practicing the equivalent of orthopedics at the time he examined the plaintiff's leg. Further, plaintiff maintains that any objection defendant may have had to the competency of the witness was waived by defendant's failure to make the objection at the time of Dr. Woiteshek's *de bene esse* deposition.

The Court concludes that the issue of whether two doctors specialize in "related, relevant areas of medicine" is a question of law. Unfortunately, there are no published Michigan cases interpreting the phrase "related, relevant area of medicine."[6] All of the

5. In the motion which was filed, defendant argued only that Dr. Woiteshek is not qualified to testify as to the defendant's standard of care under Michigan case law. The Court called the statute to the parties' attention and further argument was taken over the telephone on April 21, 1994.

6. This statutory section was enacted in 1986, as part of a series of bills collectively referred to as the tort reform acts of 1986:

The [Michigan] legislature, responding to a perceived malpractice crisis, enacted numerous amendments to the Revised Judicature Act as part of a general tort reform movement. Some of the objectives of the tort reform legislation were to eliminate "forum shopping," excessively large jury verdicts, and the filing of

cases cited by the plaintiffs in support of their position predate the effective date of the statute. In the opinion of the undersigned, the statute evidences a clear legislative intent to change the law and to significantly limit the admissibility of certain expert testimony in medical malpractice cases.

A family practitioner engages in a generalized practice providing primary care, which has no focus on a particular "age, sex, organ system, or disease entity." ABMS Dir., ABFP, at p. 697. The family practitioner often represents the patient's initial contact and a means of entry into a complex system of specialized health care. *See* "Philosophical Statement on the Scope of Family Practice," American Academy of Family Practice (AAFP), Reprint No. 307 (copy attached). *See also* AAFP Reprint No. 300 (copy attached). On the other hand, an orthopedic surgeon is concerned with the skeleton and those body structures which affect the proper functioning of the bones. Rather than representing a means of entry into the health care system, the orthopedic surgeon most commonly receives patients through a referral process.

In addition, vast differences exist between these specialties in the educational requirements for board certification. In order to become board certified in Family Practice, a physician will be tested in multiple disciplines, including Internal Medicine, Pediatrics, Surgery, Obstetrics, Gynecology, Psychiatry, Behavioral Sciences, Community Medicine, and Geriatrics. ABMS Dir., ABFP, at p. 697. On the other hand, in order to become board certified in Orthopedic Surgery, a physician must demonstrate proficiency and knowledge only in orthopedic surgery, including inpatient and outpatient diagnosis and care as well as operative and nonoperative management and rehabilitation. *See* "American Board of Orthopaedic Surgery, Inc.," *Official American Board of Medical Specialties Directory* (1994), at p. 3813 (copy attached) (hereinafter "ABMS Dir., ABOS").

Based upon the foregoing considerations, the Court finds that orthopedic surgery is not a "related, relevant area of medicine" to family practice. Like an emergency room doctor, often the family practitioner's job is to, in effect, "triage" the patient. The family practitioner is presented with a constellation of symptoms which must be assessed in light of the broad body of knowledge required for a generalized practice. This job includes making an initial diagnosis and determining what treatment should follow and who is best to provide that treatment. Unlike the family practitioner, the orthopedic surgeon does not have a generalized practice. Other specialties which might, under proper circumstances, qualify as related, relevant areas of medicine to family practice include perhaps Emergency Medicine, Internal Medicine, Pediatrics and Geriatrics. These specialties provide primary care in a more generalized practice setting similar to the family practitioner's practice.

Plaintiff would of course like to have an orthopedic surgeon testify as to the defendant's standard of care, since now, in hindsight, we know that plaintiff sustained a fractured bone. Had plaintiff been seen initially by an orthopedic surgeon, that physician would have been held to the standard of care applicable to an orthopedic surgeon, and Dr. Woiteshek's testimony would be admissible. It is certainly likely that an x-ray would have been ordered by an orthopedic surgeon—since that is what orthopedic surgeons do to assess the orthopedic health of their patients. Had plaintiff been seen initially by an infectious disease specialist, perhaps laboratory cultures of the wound would have been ordered. Had plaintiff been seen initially by a plastic surgeon, perhaps the wound would have been closed differently and with less scarring. But, plaintiff was not seen by any of these specialists. Rather, plaintiff sought the advice of a family practitioner. Under Michigan law, a family practitioner cannot be held to the standard of care of these other specialists.

Plaintiff maintains that the Court has the discretion to conclude that orthopedic surgery is "related" to family practice. As ap-

frivolous claims in the medical malpractice area.

*Slifcak,* 1991 U.S.Dist. LEXIS 11805 at *1.

pealing as that suggestion might be in this case, the Court cannot ignore the language of the statute and the clear legislative intent. Under the Michigan statute, in this case, the expert testimony must come from one who provides primary care in a generalized practice. It is no longer permitted for an expert to testify that, despite the fact that the expert's own specialty differs from that of the defendant's specialty, he or she is eminently familiar with the standards of care applicable to the defendant's specialty. Rather, in Michigan, the expert must now be able to testify that he or she is familiar with the standard of care to which the defendant was subject because the expert specializes in the same or a closely related specialty. Absent the close nexus between the expert's and the defendant's specialties, the expert's knowledge of the defendant's standards of care is irrelevant and the testimony is incompetent.

If the Court adopted the plaintiff's proposed interpretation of the "related, relevant area of medicine" language in the statute, a family practitioner who looks into an ear canal or a throat would be held to the standard of care for an Ears, Nose and Throat specialist, or, when doing a heart work-up, to the standard of a cardiologist. A family practitioner would be held to the standards of care for every specialist who treats patients for maladies presented for initial diagnosis to a family practitioner. This is not the intent of the Michigan legislature in enacting the statute at issue. Furthermore, such a construction is contrary to the language of M.C.L.A. § 600.2912a; M.S.A. § 27A.2912(1), which establishes that defendant must be held to the standard of care of a family practitioner.

Accordingly, the Court concludes that an orthopedic surgeon and a family practitioner do not practice related, relevant areas of medicine. Unless the defendant's objection was waived, Dr. Woiteshek is precluded from testifying against the defendant as to the defendant's standard of care.

■ The waiver rule provides as follows:
(3) As to Taking of Deposition.
    (A) Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

Fed.R.Civ.P. 32(d).

The rule provides that failure to make an objection during a deposition does not waive the objection unless the objectionable matter could have been cured if presented at that time. In the instant case, a simple objection as to the witness' competency at the deposition would not have cured the defect present here. An orthopedic surgeon cannot change his or her specialty or his or her type of practice during a deposition. Nor would the defect have been cured by having the witness testify that he or she is familiar with the standards of care applicable to family practitioners, since Michigan law requires that the expert witness *practice* the related, relevant specialty. The objection, had it been made, would have been to a defect which could not have been cured during the proceeding then being conducted. Moreover, even if the objection had been made at the deposition, plaintiff would not have had the opportunity to cure the defect by subsequently finding an appropriately qualified expert, for the deadline for listing experts had long since passed.

Most cases addressing this rule involve the more typical scenario concerning the form of a particular question, rather than the broader issue of the competency of a witness. In *Cordle v. Allied Chemical Corp.*, 309 F.2d 821 (6th Cir.1962), the Court concluded that the rule applied where the doctor improperly premised his expert testimony on statements made to him by the plaintiff, where (had the objection been made) the doctor could have framed his answer purely on the basis of a hypothetical. *Id.* at 825–26. *Cordle* further concluded that, under Tennessee law, a general surgeon was qualified to testify against an orthopedic surgeon. *Id.* at 826.

In *Schulz v. Owens–Corning Fiberglas Corp.*, No. 87–1412, 1990 WL 126158, 1990 U.S.Dist. LEXIS 11396 (E.D.Pa. Aug. 27, 1990) (unpublished) (copy attached), *aff'd in part, vacated in part*, 942 F.2d 204 (3d Cir. 1991), the defendant objected to the admis-

sion of Dr. Freedman's testimony (by video deposition) where he failed to couch his testimony as to medical causation in the "requisite degree of medical certainty." The trial court determined that "the insufficiency of plaintiff's expert testimony could not become an issue until after plaintiff rested her case." Accordingly, the court concluded that the defect could not have been cured during the deposition and was thus not waived by the defendants' failure to object at the deposition.

*Harvey v. Yellow Freight System, Inc.*, No. 87–1205–C, 1990 WL 171014, 1990 U.S.Dist. LEXIS 14761 (D.Kan. Oct. 24, 1990) (unpublished) (copy attached), presented a nearly identical issue as that addressed in *Schulz,* except that plaintiff sought to have the testimony offered by defendant excluded. In *Harvey,* the defendant argued that his failure to lay a proper foundation could have been easily corrected had plaintiff made the proper objection. The court concluded that plaintiff's failure to make the objection at the deposition did not waive the objection because "the issue of causation is a substantive requirement, not merely one of 'form.'"

The Court concludes that Rule 32(d)(3) is intended to require a contemporaneous objection to defects which could have been cured during the deposition. The Court concludes therefore that a medical expert witness' competency to testify at all, depending as it does under Michigan law upon factors which cannot be altered during the course of a deposition, is not waived if no objection is made during the deposition.

Accordingly, the objection is now properly before the Court. Having concluded that the objection must be sustained, the video deposition of plaintiff's expert witness, Dr. Woiteshek, will be redacted to exclude any testimony concerning the defendant's standard of care.